Joanne FALINSKI, Plaintiff,

v.

Raymond G. KUNTZ, individually, Virginia Rederer, individually, Richard D. Levinson, individually, Russell Markman, individually, Gail Horgan, individually, Peter Walker, individually, Edward J. Flynn, individually, Robert Laibowitz, individually, and Hendrick Hudson Central School District, Defendants.

No. 97 CIV. 04662(CM).

United States District Court,
S.D. New York.

Jan. 29, 1999.

Jonathan Lovett, Craig Dickinson, Lovett & Gould, White Plains, NY, for plaintiff.

Bettina B. Plevan, Proskauer Rose LLP, New York, NY, for defendants.

## MEMORANDUM DECISION AND ORDER

McMAHON, District Judge.

## MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DISMISSING PLAINTIFF'S CLAIMS [1]

Plaintiff Joanne Falinski brought this action in June 1997, asserting six claims under 42 U.S.C. §§ 1983 and 1985 against individual Defendants Raymond G. Kuntz, Virginia Rederer, Richard D. Levinson, Russell Markman, Gail Horgan, Peter Walker, Edward J. Flynn, Robert Laibowitz, and against the Hendrick Hudson Central School District for alleged violations of her rights under the First and Fourteenth Amendments to the United States Constitution. Defendants have moved to dismiss all of Plaintiff's claims on a variety of grounds, including that they are barred by the applicable statute of limitations, that the individual defendants are shielded by qualified immunity, and for failure to state a claim on which relief can be granted. For the reasons stated below, all claims are dismissed with prejudice.

## I. Factual Background

Ms. Falinski was employed in 1983 as principal of Furnace Woods School, an elementary school within the defendant Hendrick Hudson Central School District (the "District"). (Complaint ¶ 3; Pl.'s Rule 56.1 Stmt. ¶ 1). While employed as principal, Ms. Falinski introduced a then-popular but now highly controversial method of teaching known as "Whole Language" philosophy into the Furnace Woods School. (Pl.'s Rule 56.1 Stmt. ¶¶ 3 & 4). As opposition to the use of Whole Language mounted nationwide,[2] a group of parents with children attending the Furnace Woods School became vocal opponents of the Whole Language teaching philosophy and lobbied the District Board of Education (the "Board") for changes to the curriculum. (Compl. ¶ 16). In the summer of 1993, a group of parents calling themselves "Concerned Parents" sent an unsigned letter to the District voicing opposition to the Whole Language program and calling for Ms. Falinski's removal by the Board. (Compl. ¶ 22).

Ms. Falinski's advocates among teachers and parents voiced their support to the Board with equal vigor and the resulting

---

1. Many of the papers submitted pursuant to Defendants' motion have been filed under seal because they contain names and identifying information about minors whose privacy is protected under state and federal law. This opinion has been written so that it contains no such information and, thereby, poses no threat to any privacy interests. Accordingly, the Court has elected not to seal this order.

2. *See, e.g.,* Joseph Berger, *Fighting Over Reading; Principal and Methods are Under Fire,* N.Y. TIMES, Nov. 17, 1993, at B1; Peggy O'Crowley, *How Should Johnny Read?; Educators Debate Which Comes First: Sound or Meaning,* BERGEN RECORD, Sept. 22, 1991, at L1; John Slayton, *Why's California Dumbing Down English Classes?,* SACRAMENTO BEE, June 20, 1993, at F1; Bruce Bower, *'Whole Language' Approach Gets a Critical Read,* 9 SCI. NEWS 132 (Vol.144, Aug. 28, 1993).

conflict became public and highly contentious. (Pl.'s Rule 56.1 Stmt. ¶ 12). At or around the same time, Ms. Falinski herself entered the fray, and the complaint avers that she addressed critical remarks to the complaining parents about the curricular changes they favored. (Compl. ¶¶ 20 & 21). Ms. Falinski had tenured civil service status and could not be fired merely for being controversial. (Compl. ¶ 3). Therefore, the complaint alleges, the defendant administrators secretly met with the District's lawyer, defendant Raymond G. Kuntz, and conspired in an effort to get rid of Ms. Falinski. (Compl. ¶¶ 24 & 25).

To that same end, Kuntz allegedly drummed up complaints from dissatisfied parents and District personnel. (Compl. ¶ 26). Interestingly, these complaints (which Defendants deny soliciting) did not relate to Whole Language, but rather came from the parents of children who needed, or who were believed to need, special educational services directed to learning disabilities. (*See* Affidavit of Virginia C. Rederer ¶¶ 5, 7, 9, 10, 13; *see also* Exhs. 1–4, attached to Rederer Aff.). The complainants alleged that their children were inappropriately denied special services to which they were entitled under the Individuals With Disabilities Education Act ("I.D.E.A."), which denial (if unfounded) could well have led to lawsuits by the parents against the District. (*See* Rederer Aff. ¶¶ 5, 7, 9, 10, 13; *see also* I.D.E.A., 20 U.S.C. §§ 1400 et seq.).

After investigating the parents' complaints, the District brought disciplinary charges against Ms. Falinski in September 1993 pursuant to New York Education Law § 3020–a. (Compl. ¶ 30; Defs.' Rule 56.1 Stmt. ¶¶ 9, 10, 12, 13). Once the charges against Ms. Falinski became public, other complaints surfaced concerning special needs children, and the District subsequently filed additional charges.

(Rederer Aff. ¶ 18). Hearings required by § 3020–a (the "Disciplinary Proceedings") began in May 1994 and continued for over three years; they had not concluded at the time Ms. Falinski commenced this action.[3] Throughout the pendency of the Disciplinary Proceedings, Ms. Falinski has been suspended from her job and placed on desk duty with significant restrictions on her access to the public. (Compl. ¶¶ 31 & 32).

After charges were filed, but before the Disciplinary Proceedings commenced, Ms. Falinski and her counsel, believing her to be the subject of unfounded rumors concerning the types of charges she faced, made it known that they were going to publicize the nature of the allegations. (Compl. ¶¶ 34 & 35). According to Defendants, Ms. Falinski's counsel and some of her supporters threatened to go further and bring pressure to bear on the complaining parents by publishing their children's names, in violation of federal and state law. (Rederer Aff. ¶¶ 20–22). Accordingly, Defendant Virginia Rederer authorized, and Kuntz commenced, a lawsuit in State Supreme Court to enjoin publication of the charges as long as they contained the names of the children or any information from which informed readers could deduce their identities. (Rederer Aff. ¶¶ 24 & 25). On November 23, 1993, Judge Peter Rosato of the New York State Supreme Court, Westchester County, issued a preliminary injunction barring Ms. Falinski from disclosing copies of the charges containing the names of the children, and otherwise denying the requested relief. (Rederer Aff., Exh. 14).

At first, the Disciplinary Proceedings generated significant public interest. The Board selected as the hearing site the District's central office boardroom, where the Board holds many public meetings, but space was too limited to accommodate ev-

---

**3.** As of April 1998, when Defendants filed their reply papers with this Court, the District had concluded its case and the parties awaited a decision from the disciplinary panel on Ms. Falinski's motion to dismiss some of the charges. (Defs.' Rule 56.1 Stmt. ¶ 24). The Court has not been advised whether the § 3020–a proceedings have concluded.

eryone who might wish to attend. (Rederer Aff. ¶¶ 29 & 30). After allowing for the parties and the press, there were 26 seats remaining in the boardroom. The District instituted a lottery system for determining who would get those seats (the "Lottery System"), and names were drawn. *Id.* Over time, interest in attending the Disciplinary Proceedings waned, and the Board stopped using the Lottery System in mid-summer. (Rederer Aff. ¶ 30). Overall, the Lottery System was in effect for three sessions, including May 26, 1994; July 18, 1994; and July 20, 1994. *Id.* The Board officially suspended the Lottery System during its December 14, 1994 meeting. *Id.*

## II. Ms. Falinski's Claims

■ Three of Ms. Falinski's claims (first, third, and fourth) concern the institution and delay of the Disciplinary Proceedings themselves. Two more claims (fifth and sixth) concern the aforementioned Lottery System. Ms. Falinski's remaining claim (second) concerns the state injunction proceeding commenced by the District to bar Plaintiff from disclosing the names of, and information about, children mentioned in the charges.[4]

### A. *The Disciplinary Proceedings*

For Ms. Falinski's first claim, she alleges that Defendants violated her First Amendment rights by bringing disciplinary charges against her in retaliation for her exercise of free speech, namely, for her vocal advocacy of the Whole Language curriculum. (Compl.¶¶ 41, 44, 45). Ms.

Falinski asserts in her third claim, without specificity, that the Defendants purposefully delayed the commencement of the Disciplinary Proceedings until May 1994 and have intentionally prolonged the hearings' duration to bankrupt her, destroy her reputation, and coerce her to resign—again, in retaliation for her First Amendment activities. (Compl.¶¶ 41, 48, 49). Finally, for her fourth claim, Ms. Falinski contends that the Defendants' unreasonable delay in prosecuting the Disciplinary Proceedings violated her due process rights under the Fourteenth Amendment. (Compl. ¶¶ 50 & 51).

### B. *The Lottery System*

Ms. Falinski's fifth and sixth claims concern the Lottery System used to distribute seats to the general public during the first three sessions of the Disciplinary Proceedings in the Summer of 1994. Plaintiff's fifth claim alleges that the Lottery System excluded her supporters from the public hearings, in violation of her right to due process under the Fourteenth Amendment. (Compl. ¶¶ 52 & 53). Similarly, Ms. Falinski's sixth claim asserts that this practice violated her First Amendment right to exercise her free speech. (Compl. ¶¶ 54 & 55).

### C. *The State Injunctive Action*

For her second and remaining claim, Ms. Falinski alleges that the Defendants pursued the state injunctive action against her in retaliation for her attempts to dis-

---

4. Ms. Falinski generally alleges a violation of 42 U.S.C. § 1985 at the beginning of her complaint, but does not indicate which subsection she believes applies. The only possible basis for a § 1985 claim on these facts is under § 1985(3), which prohibits conspiracies to deprive "either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Under § 1985(3) a "plaintiff must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'." *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994)

(quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Claims of conspiracy " 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.' " *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (citation omitted).

Ms. Falinski has not alleged any specific facts in her complaint to support her conspiracy claim pursuant to any subsection of 42 U.S.C. § 1985, nor does she address Defendants' arguments in favor of dismissing her § 1985 claim. Accordingly, I conclude that her reference to § 1985 was an error.

close the nature of the charges she faced and that, in doing so, the Defendants violated her First Amendment rights. (Compl.¶¶ 36, 46, 47).

### III. Legal Analysis

Defendants now move, pursuant to Federal Rule of Civil Procedure 56(b), for summary judgment dismissing Plaintiff's claims on the grounds that: (1) they are all barred by the applicable statute of limitations; (2) the complaint failed to state a cause of action for any of the Plaintiff's claims; (3) the claims are barred against Defendants Kuntz and Rederer by absolute immunity; and (4) the claims are barred against all individual defendants by qualified immunity.

The standard for granting summary judgment is well established and need not be repeated here. The Court assumes all of the complaint's well-pleaded facts to be true and draws all reasonable inferences in Plaintiff's favor.

### A. *Statute of Limitations*

 A federal district court reviewing § 1983 claims derives the statute of limitations from applicable state law. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). New York's three year statute of limitations for general personal injury claims governs this action. *See Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Woods v. Candela,* 13 F.3d 574, 575 (2d Cir.1994); New York Civ. Prac.L. & R. 214(5) (McKinney 1990). Ms. Falinski commenced this action on June 25, 1997; accordingly, her claims are time-barred unless (1) they accrued after June 24, 1994, or (2) the statute of limitations was tolled.

 Federal law governs when a § 1983 claim accrues. *See Morse v. University of Vt.,* 973 F.2d 122, 125 (2d Cir. 1992). In this Circuit, "a cause of action

accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Woods,* 13 F.3d at 575. The plaintiff has knowledge of the injury "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir. 1994).

### (1) *First, Third, and Fourth Claims (Disciplinary Proceedings)*

 As the complaint acknowledges, the Defendants began the Disciplinary Proceedings pursuant to § 3020–a by (1) finding "probable cause" in September 1993; (2) suspending Ms. Falinski from the position of principal on October 6, 1993; and (3) commencing the hearings on May 19, 1994. (Compl.¶¶ 30–33). Each of these acts individually—and certainly all of them together—placed Plaintiff on notice of Defendants' alleged retaliatory intentions. It cannot be disputed that Ms. Falinski had notice no later than May 19, 1994, when the hearings commenced, of Defendants' alleged motivation for instituting the Disciplinary Proceedings. Accordingly, Ms. Falinski's first claim—that Defendants unconstitutionally retaliated against her by bringing disciplinary charges—is time-barred.

For her third and fourth claims, however, Ms. Falinski asserts that Defendants delayed commencing the Disciplinary Proceedings in retaliation for her free speech activities and that their unduly lengthy prosecution (over three years) violated her due process rights.[5] As above, the complaint discusses Ms. Falinski's belief that the Defendants had perpetrated "a substantial period of calculated delays" *prior* to commencing the Disciplinary Proceedings in May 1994. (Compl.¶ 33). Plaintiff contends further that the alleged dilatory tactics, consisting of repeated adjourn-

---

5. Defendants dispute Ms. Falinski's contention that they are solely responsible for pro-

longing the Disciplinary Proceedings.

ments and canceled hearing dates, stem from the same retaliatory animus that motivated Defendants' ·other improper actions. (Compl. ¶¶ 40, 41(a) & (b)).

Defendants argue that Ms. Falinski's claims are time-barred because she had notice of any retaliatory motive once she became aware of the alleged dilatory tactics; *i.e.*, prior to commencement of the hearings on May 19, 1994. However, Plaintiff's delay-based claims reach beyond the delayed commencement and encompass the allegedly dilatory manner in which Defendants have taken over three years to present their case against Ms. Falinski. Construing all reasonable inferences in Plaintiff's favor, this Court finds that Ms. Falinski may not reasonably have appreciated that a six-month delay in commencing the hearings would necessarily result in a three-year hearing. Ms. Falinski may be able to prove that she could not reasonably appreciate the injuries she suffered until Defendants had improperly prolonged her hearing for many months, let alone the one month necessary to bring her claim within the statute of limitations. Accordingly, I deny Defendants' motion for summary judgment and dismissal of Plaintiff's third and fourth claims on the grounds that they are time-barred.

(2) *Fifth and Sixth Claims (The Lottery System)*

 The Board allocated seats for the public at the first *pro forma* session of Ms. Falinski's Disciplinary Proceedings, on May 19, 1994, and at two subsequent sessions that summer. If Defendants devised the Lottery System out of animus for Plaintiff's free speech and due process rights, as Ms. Falinski alleges, then the resultant injury became apparent on May 19, 1994, when the Lottery System first took effect. Any claim concerning the De-

fendants' motive for instituting the Lottery System accrued on that date. Ms. Falinski does not dispute Defendants' contention that she never challenged the Lottery System prior to this suit. Plaintiff's fifth and sixth claims are time-barred.

 Furthermore, even if Ms. Falinski's fifth and sixth claims were timely, they are also dismissed on the merits because the facts as pleaded do not reflect a violation of Plaintiff's constitutional rights. It is hard to imagine how open hearings, with provision for press attendance and random distribution of seats to the public, infringed her rights to due process under the Fourteenth Amendment. Plaintiff had no right to ensure the attendance of particular members of the public at her hearing. It trivializes the Due Process Clause to suggest that the failure to select a room that could accommodate everyone who might want to attend rises to the level of a constitutional violation.

Similarly, Ms. Falinski has not shown how her free speech rights were affected by the composition of the audience. She makes no allegation that Defendants (or anyone) prevented her from speaking during the Disciplinary Proceedings, nor that she was barred from speaking outside the hearings with any of her supporters who may been denied access through the Lottery System. Thus, even if timely, Plaintiff's fifth and sixth claims are dismissed with prejudice as frivolous.

(3) *Second Claim (State Injunctive Action)*

 As discussed above, Ms. Falinski contends in her second claim that Defendants improperly sought injunctive relief in state court for retaliatory purposes and that their actions violated her First Amendment rights.[6] Ms. Falinski asserts

---

6. Ms. Falinski points to the Appellate Division, Second Department's imposition of $2,500 in sanctions against the law firm of Raymond G. Kuntz, P.C. in an October 15, 1996 order for "conduct in pursuing a frivolous appeal" as evidence of the Defendants' alleged improper motive in this state action. (Compl. ¶ 37; *see also* Affidavit of Raymond G. Kuntz., Exh. G). While the parties may dispute the merits of Defendants' state injunctive action, the October 15, 1996 order sanctioning defendant Kuntz's law firm pertains

that she never intended to reveal information about the students named within the charges, but instead sought only to dispel rumors about the undisclosed charges and counter any damage to her reputation. (Compl. ¶ 35).

Once again, Defendants correctly counter that Plaintiff's claim is time-barred. Defendants commenced the state injunctive action with an order to show cause, signed on October 27, 1993, containing the temporary restraining order that Ms. Falinski alleges infringed her speech. Thus, Ms. Falinski's injury, if it existed, became apparent in October 1993, and any claim stemming from this injury accrued at the same time. Because Plaintiff did not seek relief for her alleged injury until June 1997, her second claim is time-barred.

## B. Continuing Violation Exception to the Statute of Limitations Bar

■ Ms. Falinski contends that the statute of limitations governing her claims should have been tolled because she suffered injuries that were part of a "continuing violation." "The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations.'" *Annis v. County of Westchester*, 136 F.3d 239, 245–46 (2d Cir.1998) (alteration in original) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997)). The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of "compelling circumstances." *Davis v. City Univ.*, 94 Civ. 7277(SHS), 1996 WL 243256, at *10, 1996 U.S. Dist. LEXIS 6345, at *29 (S.D.N.Y. May 8, 1996) (citing cases).

■ In the Second Circuit, "a continuing violation may be found where there

is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice" but may not be premised upon "discrete incidents of discrimination that are not related to discriminatory policies or mechanisms." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994); *see also Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir.1993); *Davis*, 1996 WL 243256, at *10, 1996 U.S. Dist. LEXIS 6345, at *28. A plaintiff cannot establish a continuing violation "merely because she continues to feel the effects of a discriminatory act on the part of the employer. To hold otherwise would render meaningless the time limitations imposed on discrimination actions." *Lightfoot*, 110 F.3d at 907–08.

■ Ms. Falinski's unsubstantiated assertion that Defendants' actions constituted an ongoing conspiracy to delay the Disciplinary Proceedings does not come close to establishing the specific policies or mechanisms necessary to invoke the exception in this Circuit. *See, e.g., Cornwell*, 23 F.3d at 704 (finding continuing violation where plaintiff presented proof of consistent pattern of specific discriminatory hiring practices); *see also Lambert*, 10 F.3d at 53. Plaintiff does not allege any specific discriminatory policy, but broadly proclaims that all of Defendants' acts constituted a "continuous, orchestrated course of retaliation." Pl.'s Memorandum of Law in Opposition to Summary Judgment at 26. Ms. Falinski cannot claim shelter from the statute of limitations merely by uttering the phrase "continuing violation" without alleging the existence of a specific policy or mechanism. *See, e.g., Davis*, 1996 WL 243256, at *10, 1996 U.S. Dist. LEXIS 6345, at *29; *see also Acosta v. Yale Club*, 94 Civ. 0888(KTD), 1995 WL 600873, at *6,

---

solely to a frivolous appeal of an order compelling the School District to comply with a notice of deposition. (*See* Kuntz Aff., Exh. G). Contrary to Ms. Falinski's argument, the order does not support her general contention that Defendants pursued the state injunctive action for retaliatory purposes.

1995 U.S. Dist. LEXIS 14811, at *16 (S.D.N.Y. Oct. 5, 1995).

Furthermore, Ms. Falinski cannot tie together separate and discrete acts of alleged retaliation that occurred over a period of several years into one timely continuing violation. This Circuit requires "specific and *related* instances of discrimination ... permitted by the employer to continue unremedied." *Cornwell,* 23 F.3d at 704 (emphasis added). In *Cornwell,* the plaintiff had presented evidence that she experienced several similar instances of race- and gender-based harassment over two distinct time periods divided by an illness-based absence: from 1981 to 1983, and again in 1986 until she left the defendant's employ. *Id.* Consequently, the panel affirmed the district court's ruling that the plaintiff's earlier claims were timely because the defendant employer had committed a continuing violation culminating in Cornwell's 1986 departure. *Id.*

By contrast, Ms. Falinski bases her retaliation argument on two timely claims and a number of patently unrelated acts that occurred outside of the statutory period: (1) the 1993 investigation by Rederer and Kuntz of the basis for the complaints lodged against the Plaintiff; (2) the Board's finding of probable cause in October 1993; (3) the commencement of the state injunctive action in November 1993; and (4) the institution of the Lottery System in May 1994. These actions are wholly separate from, and unrelated to, Ms. Falinski's timely claims stemming from Defendants' alleged dilatory prosecution of the Disciplinary Proceedings, except in that Plaintiff claims generally that they resulted from the same improper retaliatory motive. As this Court has previously found that Ms. Falinski had sufficient notice of any alleged improper motive early enough to render time-barred four of her claims, Plaintiff cannot now resurrect these stale claims by stating that dissimilar acts are related. To hold otherwise would turn the continuing violation doctrine into a "boundless exception" to the

statute of limitations. *See Johnson v. Nyack Hosp.,* 891 F.Supp. 155, 165 (S.D.N.Y.1995).

Accordingly, Ms. Falinski's first, second, fifth, and sixth claims are dismissed as barred by the statute of limitations.

## C. *Qualified Immunity*

The Court now turns to Defendants' contention that the doctrine of qualified immunity requires dismissal of the remaining claims against all of the individual defendants. The qualified immunity doctrine "balance[s] the need to protect the rights of citizens through damage remedies, with the opposing need 'to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Danahy v. Buscaglia,* 134 F.3d 1185, 1189 (2d Cir.1998) (quoting *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). The Second Circuit observed, in *Danahy,* that "qualified immunity protects government officials from liability for civil damages if the challenged action 'does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 1190 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness must be apparent." *McEvoy v. Spencer,* 124 F.3d 92, 96 (2d Cir.1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The Court assesses three factors in determining whether a particular right was clearly established at the time of the alleged offense:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right

in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*McEvoy,* 124 F.3d at 97 (citing *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991)).

 The Court must determine as a matter of law with respect to the third factor—the only one in dispute here— whether " 'it was objectively reasonable for [the defendant officials] to believe that their acts did not violate those rights.' " *Danahy,* 134 F.3d at 1190 (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987)). "[A] government official's actions will be considered objectively reasonable if 'officers of reasonable competence could disagree' on the legality of defendant's actions.' " *Id.* (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)).

This issue turns on an understanding of the Second Circuit's holding in *McEvoy v. Spencer,* in which the panel addressed the intersection of two lines of decisions from the Supreme Court—the so-called *Pickering* line of cases and the *Elrod* line of cases. *See McEvoy,* 124 F.3d at 97–98. In *Pickering v. Board of Educ. of Township High School,* the Supreme Court adopted a balancing test to determine whether a public employer violates the First Amendment when it dismisses an employee for speaking out on matters of public concern. *Pickering,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Court recognized the conflict between citizen employees' "right to speak on matters of public concern" and the public employer's "strong interest 'in promoting the efficiency of the public services it performs through its employees.' " *McEvoy,* 124 F.3d at 98 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731).

Later, in *Elrod v. Burns,* the Supreme Court recognized a public employer's "vital" interest in ensuring the "political loyalty of employees" and, thus, upheld the dismissal of certain public employees as a result of free speech activities. *Elrod,* 427 U.S. 347, 363, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The *Elrod* Court adopted a categorical approach seemingly at odds with the *Pickering* balancing test, in that it generally prohibited dismissals of low-level employees but upheld the public employer's right to dismiss "policymaker" employees on the basis of political affiliation without violating the First Amendment. *Elrod,* 427 U.S. at 367, 96 S.Ct. 2673.

Examining the potential conflict of these two decisions, the Second Circuit subsequently held, in *McEvoy,* that an employee's status as policymaker is but one of several factors to be considered as part of the *Pickering* balancing test. *McEvoy,* 124 F.3d at 103. Of particular interest here, the *McEvoy* panel noted that because "the issue of a policymaker exception to *Pickering* was not definitively settled against employers" prior to the *McEvoy* ruling, the individual defendants in that case were entitled to qualified immunity on the First Amendment retaliation claim. *McEvoy,* 124 F.3d at 105.

 Defendants now contend that, like the individual defendants in *McEvoy,* they should benefit from qualified immunity because, at the time Ms. Falinski alleges her rights were violated, the Second Circuit had not yet addressed the scope of a policymaking employee's First and Fourteenth Amendment protection from adverse employment actions based on speech. Thus, even if the Court credits all of Ms. Falinski's allegations, Defendants assert that it was objectively reasonable for them to believe that she was a policymaker and that their actions did not violate her clearly established constitutional rights. Consequently, Defendants conclude that they are immune from individual liability under § 1983. Defendants are correct.

The Court finds as a matter of law that it was objectively reasonable for Defendants to believe that Ms. Falinski was an *Elrod* policymaker throughout the time of her speech and of Defendants' allegedly retaliatory responses to it. In fact, Ms.

Falinski affirmatively asserted her policy-making activities in her motion papers. *See, e.g.* Plaintiff's Affidavit in Opposition to Summary Judgment, at 5 ("... I strongly advocated a transition to a Whole Language program at Furnace Woods School and we started to implement methods of instruction which reflected the philosophy."). Further, all of the activities at issue in Ms. Falinski's June 1997 complaint necessarily occurred prior to the Second Circuit's *McEvoy* decision, issued on August 11, 1997. Thus, this case is no different from several other recent Second Circuit and Southern District decisions which have held that, when it is objectively reasonable to view a public employee as a policymaker, and the employee's speech or the alleged retaliatory action occurred prior to *McEvoy*, the individual defendants are entitled to qualified immunity on § 1983 claims. *See, e.g., Danahy*, 134 F.3d at 1191; *Fry v. McCall*, 95 Civ. 1915(JCK), 1998 WL 770563, at *5 (S.D.N.Y. Nov. 4, 1998); *Roniger v. McCall*, 22 F.Supp.2d 156, 166–67 (S.D.N.Y.1998); *Crockett v. Pataki*, 97 Civ. 3539(LAP), 1998 WL 614134, at *8 (S.D.N.Y. Sept. 14, 1998); *Stanley v. Cooper*, 996 F.Supp. 316, 320–21 (S.D.N.Y.1998).

Accordingly, the individual defendants are shielded by qualified immunity from Ms. Falinski's remaining claims as a matter of law. These claims (third and fourth) are dismissed with prejudice as against all defendants.

### D. *Claims Against the School District*

In addition to her claims against individual defendants, Ms. Falinski also named the Hendrick Hudson School District as a municipal defendant in her complaint, but these claims, too, must fail because Plaintiff has not presented sufficient allegations of an unlawful governmental custom or policy to hold the municipality liable for § 1983 violations of its employees. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also* "continuing violation" doctrine discussion, *supra* § III(B).

### E. *Plaintiff's Discovery–Based Objection*

Ms. Falinski asserts, to no avail, that the Court should defer consideration of the pending motion so that Plaintiff might seek additional discovery pursuant to Federal Rule of Civil Procedure 56(f). The Court is not persuaded that further discovery would enable Ms. Falinski to rebut more effectively Defendants' motion for summary judgment on the grounds that four of Ms. Falinski's claims are time-barred and that all individual defendants are shielded by qualified immunity from the remaining claims. Ms. Falinski's failure to seek any such discovery to date, notwithstanding a written offer from Defendants to discuss "any discovery you will contend is necessary to oppose the motion" reinforces the Court's conclusion. *See* Affidavit of Bettina B. Plevan, ¶ 2 & Exh. 1.

## IV. Conclusion

Having dismissed all of Plaintiff's claims as barred by the statute of limitations and qualified immunity, the Court need not reach Defendants' other arguments.

This constitutes the decision and order of the Court. The Clerk is ordered to dismiss all of Plaintiff's claims with prejudice.