**Willis CROSLAND, Plaintiff,**

v.

**The CITY OF NEW YORK, New York City Police Department, the Board of Trustees of Police Pension Fund, Defendants.**

**No. 99 CIV. 10483(SAS).**

United States District Court, S.D. New York.

April 16, 2001.

Fred Lichtmacher, New York City, for Plaintiff.

Bryan D. Glass, Assistant Corporation Counsel, New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Willis Crosland, a retired police officer, has sued the City of New York, the New York City Police Department ("NYPD"), and the Board of Trustees of the Police Pension Fund ("PPF") asserting numerous civil rights violations under federal and state law. Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all of plaintiff's claims. For the reasons that follow, defendants' motion is granted.

## I. BACKGROUND

### A. Retaliation Against Plaintiff

Crosland, a black male, was hired as a police officer with the NYPD in January, 1982. *See* Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def.56.1") ¶ 1. In September 1983, while working with the Tactical Patrol Unit, plaintiff reported illegal activities by another officer. *See* Amended Complaint ("Am.Compl.") ¶ 16; Plaintiff's Statement of Facts For Which There Exists a Genuine Issue of Material Fact Pursuant to Local Rule 56.1 ("Pl.56.1") ¶ 1. Then, in October, 1984, plaintiff testified against that officer before a Congressional Hearing. *See* Def. 56.1 ¶ 3. Plaintiff contends that after he exposed the officer, he was subject to numerous retaliatory actions. *See id.* ¶ 4; Pl. 56.1 ¶ 12. The dates and a summary of the alleged retaliatory actions follows:

| | |
|---|---|
| 11/83: | Plaintiff received a negative evaluation. Am. Compl. ¶ 22. |
| 12/83: | Plaintiff's new supervisor told him, "Don't unpack your bags". *Id.* ¶ 24. |
| 1983: | At unspecified times, false allegations were made against plaintiff to Internal Affairs. *See id.* ¶ 25 |
| 2/84: | An official sign was altered to read that all corruption should be reported to Crosland, instead of to the Internal Affairs Unit. *See id.* ¶ 26 |
| 1984: | Plaintiff was frequently transferred between squads and partners. *See id.* ¶ 27. |
| 4/84: | Plaintiff was denied promotion to detective. *See id.* ¶ 28. |
| 9/84: | Plaintiff was denied off-duty employment. *See id.* ¶ 29 |
| 3/85: | Plaintiff was denied departmental recognition after saving the life of a police officer. *See id.* ¶ 31. |
| 10/85: | Plaintiff was denied both overtime work and pay for overtime work which he performed. *See id.* ¶ 32. |
| 8/85–1986: | Plaintiff was placed on involuntary sick leave. *See id .* ¶ 33. |
| 8/85–12/85: | Plaintiff was denied assignment to permanent command. *See id.* ¶ 34. |

| | |
|---|---|
| 1/86: | Plaintiff was assaulted by another police officer, who threatened him with his gun. The offending officer was never disciplined. *See id.* ¶¶ 37–40. Plaintiff was also transferred to the 76th Precinct, where he was assigned to the record room. *See id.* ¶ 42. |
| 2/86: | Plaintiff was transferred to the Applicant Processing Division, then to the Case Review Unit, and then to the Administrative Unit, where he became a mailman. *See id.* ¶¶ 43–44. |
| 8/88: | Plaintiff was assigned civilian employment investigations. *See id.* ¶ 45. |
| 1988: | Plaintiff was falsely accused of grand larceny auto. *See id .* ¶ 46. |
| 1989: | Plaintiff's investigative files were stolen from his cabinet and defendants refused to remedy this. *See id.* ¶¶ 48–49. |
| 9/90: | Defendants attempted to prevent plaintiff from being promoted to detective by, among other things, falsely accusing him of being a "scofflaw". *See id.* ¶¶ 52–55. |
| 7/91–1995: | While at the 73rd Precinct, plaintiff was denied a computer access code, access to police cars, training, pay for overtime work, and evaluations. He was also removed as a domestic violence investigator. *See id.* ¶¶ 60, 63. |
| 7/95: | Plaintiff was falsely accused of losing a department radio. *See id.* ¶ 64. |
| 8/95: | Plaintiff was involuntarily transferred to the 81st Precinct, where he was denied a computer access code and a homicide position. *See id.* ¶¶ 66–68. |
| 4/96: | While working in the Mayor's security unit, plaintiff was denied night differential pay. *See id.* ¶¶ 70–71. |
| 5/96: | Plaintiff was involuntarily transferred back to the 81st Precinct. *See id.* ¶ 72. |
| 12/96–6/97: | After an on-duty injury, plaintiff was required to report to the Medical Division. *See id.* ¶¶ 82, 85. |
| 7/97–9/97: | Plaintiff was periodically watched and followed by the Absence Control Unit. *See id.* ¶¶ 90–91. |
| 9/97: | A Sergeant in the Absence Control Unit ordered plaintiff to Health Services, where he was ordered to return to work. *See id.* ¶ 94 |
| 1998: | Defendants delayed the hearing on his application for accidental disability retirement. *See id.* ¶ 100. |
| 1998: | Documents about the January 1986 altercation were improperly included in plaintiff's medical file, which became part of his application for accidental disability retirement. *See id.* |
| 12/98: | Plaintiff's van was towed from his driveway for a ticket which he had already paid. *See id.* ¶ 101. |

### B. Plaintiff's Injury

On December 10, 1996, while on duty and waiting to cross the street, plaintiff suffered a shoulder injury when struck by the sideview mirror of a passing truck. *See* Def. 56.1 ¶ 6. Plaintiff reported regularly to the NYPD surgeon for evaluation of his status for duty. *See* Def. 56.1 ¶ 7; Am. Compl. ¶¶ 81–88. On June 24, 1997, plaintiff applied for an accident disability retirement pension relating to his shoulder injury.[1] *See* Def. 56.1. ¶ 8.

On October 22, 1997, while his pension application was still pending, plaintiff re-

tired from the NYPD on a vested retirement pension. *See id.* ¶ 9. The following year, on April 20, 1998, the PPF Medical Board examined plaintiff and recommended against awarding him accidental disability retirement. *See id.* ¶ 10. By letter dated July 14, 1998, plaintiff was notified that on July 8, 1998, the PPF Board of Trustees denied plaintiff's application for accidental disability retirement. *See id.* ¶¶ 11, 12.

---

**1.** Accident disability pays ¾ of an officer's salary, while ordinary disability pays ⅓ of an officer's salary. *See* Title 2 N.Y. Admin. Code § 13–252.

## C. State Court Proceedings

On November 4, 1998, plaintiff, represented by an attorney, commenced a proceeding in New York State Supreme Court to challenge the denial of his accidental disability retirement application, pursuant to Article 78 of the Civil Practice Law and Rules. *See id.* ¶ 13; *see also* Notice of Petition and Petition in *Crosland v. Safir*, Index No. 120197/98, Ex. D to Declaration of defendants' counsel Bryan D. Glass ("Glass Decl."). On March 18, 1999, plaintiff's Article 78 petition was dismissed by the Honorable William P. McCooe. *See* Order and Judgment in *Crosland v. Safir*, Ex. F. to Glass Decl.

On June 2, 1999, plaintiff, through counsel, moved for reargument. *See* Def. 56.1 ¶ 15; Amended Notice of Motion for Reargument in *Crosland v. Safir*, Ex. H. to Glass Decl. In his affidavit in support of the motion, Crosland's attorney stated:

> The Court failed to take Judicial Notice of all of the New York State Laws cited by Petitioner in his moving papers, to wit[:] Section 106 of the New York State Civil Service Law; Section 50–a of the New York Civil Rights Law and *the 1st Amendment to the U.S. Constitution.* This Court should also take Judicial Notice of ... *Section 75–b of the Civil Service Law "Retaliatory action by public employers."* The Court further failed to take notice that the illegally placed papers of petitioner's personnel records contained *racial over tones that showed bad faith* on the part of the respondents herein and could have prejudiced the Medical Board doctors. This information was neither part of petitioner's psychological folders nor should it have been in the medical unit at all.

Affidavit of David Jalosky, Crosland's attorney, in Support of Petitioner's Motion For Reargument, Ex. H to Glass Decl.,

¶ 4.A (emphasis added); *see also* Def. 56.1 ¶ 16. That motion was denied by Justice McCooe on July 20, 1999. *See* Def. 56.1 ¶ 17. Plaintiff thereafter filed an appeal from the denial of his Article 78 petition, but voluntarily withdrew it. *See id.* ¶ 18.

## D. EEOC Charges

On September 1, 1998, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and retaliation. *See id.* ¶ 19; 9/1/98 EEOC Charge, Ex. I to Glass Decl. By letter dated March 30, 1999, the EEOC dismissed his charge because "it was not filed within the time limit required by law." That letter also informed plaintiff that his right to sue expires within ninety days of receipt of the notice. *See* Def. 56.1. ¶ 20; 3/30/99 EEOC Dismissal and Notice of Rights, Ex. J. to Glass Decl.

On May 27, 1999, plaintiff filed a second charge with the EEOC solely on the basis of race. *See* Def. 56.1 ¶ 21; 5/27/99 EEOC Charge, Ex. K to Glass Decl. On July 14, 1999, plaintiff received a Right to Sue letter on the second EEOC charge. *See* Def. 56.1 ¶ 22; 7/14/99 Notice of Right to Sue Letter, Ex. L to Glass Decl.

## E. The Instant Lawsuit

On October 13, 1999, plaintiff filed this action pro se. *See* Def. 56.1 ¶ 23. On February 9, 2000, plaintiff, now represented by counsel, filed his Amended Complaint. *See id.* ¶ 24. The Amended Complaint asserts eleven claims, which can be grouped into five general categories:

1. Claim I: Retaliation in violation of plaintiff's free speech rights under the First Amendment and 42 U.S.C. § 1983 ("section 1983");

2. Claim II: Violations of due process rights under the Fourteenth Amendment and section 1983;

3. Claims III–VII: Discrimination on the basis of race [2];

---

**2.** Claims III through VII are brought under the following statutes, respectively: section

4. Claims VIII and IX: Defendants' failure to accommodate plaintiff's disability, in violation of section 290 of the NYSHRL and section 8–101 of the NYCHRL; and

5. Claims X and XI: Violations of federal and state labor laws, 29 U.S.C. §§ 207, 215, and N.Y. Lab. Law §§ 190 et seq. and 215 (McKinney 1986).

## II. LEGAL STANDARD

Rule 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law[,] [while] [a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.2000) (internal quotation marks and citations omitted).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 149–50 (2d Cir.2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.' " *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000)

(citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.1999), *cert. denied*, 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal quotation marks, citations and alterations omitted).

## III. DISCUSSION

### A. First Amendment Claim

#### 1. Time–Bar

Defendants first contend that nearly all of the claims of retaliation in violation of plaintiff's First Amendment rights are time-barred. *See* Memorandum of Law in Support of Defendants' Motion For Summary Judgment ("Def.Mem.") at 5. The statute of limitations for a section 1983 claim is governed by New York's residual three-year statute of limitations for personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir.1997). A claim generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Ormiston*, 117 F.3d at 71 (quotation marks omitted).

Because plaintiff commenced this action on October 13, 1999, only incidents that occurred after October 13, 1996 are actionable unless plaintiff can establish a "continuing violation"—that the incidents

1983; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), Exec. Law § 296 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, § 8–107 et seq.

alleged to have occurred both before and after October 13, 1996 were part of a continuous practice and policy of retaliation. Under this doctrine, a lawsuit that is timely as to any incident of retaliation in furtherance of an ongoing policy is timely as to all claims of acts of retaliation under that policy even if they would be untimely standing alone. *See Cornwell v. Robinson,* 23 F.3d 694, 703–04 (2d Cir.1994); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993); *Alleyne v. Four Seasons Hotel—New York,* No. 99 Civ. 3432, 2001 WL 135770, at *7 (S.D.N.Y. Feb.15, 2001). The "continuing violation" exception has been recognized not only in discrimination cases, but also more generally in section 1983 suits for retaliatory conduct. *See, e.g., White–Ruiz v. City of New York,* 983 F.Supp. 365, 392 (S.D.N.Y.1997); *Gros v. Port Wash. Police Dist.,* 944 F.Supp. 1072, 1083 (E.D.N.Y.1996); *Wise v. New York City Police Dept.,* 928 F.Supp. 355, 366 (S.D.N.Y.1996).

■ "The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.'" *Falinski v. Kuntz,* 38 F.Supp.2d 250, 257 (S.D.N.Y.1999) (citation omitted); *see also Lloyd v. WABC–TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995). The doctrine has generally been limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996); *Cornwell,* 23 F.3d at 704. Ordinarily, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert,* 10 F.3d at 53; *see also Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998).

Plaintiff alleges that the acts that occurred before and after October 13, 1996 occurred pursuant to an NYPD policy of punishing officers who break the "Blue Wall of Silence." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.Opp.") at 20. Specifically, he contends that the placement of documents concerning the January 1986 altercation in his medical file, the denial of his application for accidental disability retirement, the conduct of Absence Control, and the towing of his van are part of the same retaliatory policy that preceded these acts, such as defendants' denying plaintiff overtime work and night differential pay, delaying plaintiff's promotion to detective, falsely charging him with various derelictions, refusing to train him, and transferring him frequently between squads, partners, and departments.

■ Plaintiff's argument is unavailing. *First,* plaintiff has failed to demonstrate that this suit is timely as to any incident of retaliation. Not every negative employment action is fairly attributable to retaliation. Plaintiff has failed to adduce any evidence demonstrating that his constitutionally-protected speech was a "substantial motivating" factor for the actions and decisions taken after October 13, 1996. *Finnegan v. Board of Educ.,* 30 F.3d 273, 274 (2d Cir.1994); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (prima facie case of retaliation requires plaintiff to show that his conduct was constitutionally protected and that it was a "substantial" or "motivating" factor in the adverse employment action). As stated *infra* Part III.A.3, the temporal link between the alleged retaliatory acts taken after October 13, 1996 and the protected speech is too attenuated and plaintiff has not demonstrated that any of the actors responsible for these actions knew of his speech. In short, plaintiff has relied on nothing more than generalized speculation,

conjecture, and his own opinion, which are insufficient to withstand a motion for summary judgment. *See Finnegan,* 30 F.3d at 274 (dismissing section 1983 retaliation claim where plaintiff presented only conclusory allegations and his own opinion).

■ *Second,* plaintiff has failed to demonstrate that these discrete acts of retaliation are part of a retaliatory policy or practice. Although plaintiff's invocation of the "Blue Wall of Silence" may be sufficient to withstand a challenge for failure to state a claim, *see Davis v. City of New York,* No. 00 Civ. 4309, 2000 WL 1877045, at *8 (S.D.N.Y. Dec.27, 2000), something more is needed to defeat summary judgment. It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *see also Aggarwal v. New York City Health and Hosp. Corp.,* No. 98 Civ. 5063, 2000 WL 172787, at *4 (S.D.N.Y. Feb 10, 2000) ("Courts have consistently held that discrete or completed acts, including repeated failures to promote an employee, do not constitute a continuing violation."); *Pauling v. Secretary of Dep't of Interior,* 960 F.Supp. 793, 801–02 (S.D.N.Y.1997) ("Demotion, failure to promote, and termination have all been deemed discrete acts."). This is particularly true where, as here, the retaliatory acts were taken by different supervisors in different departments. *See, e.g., Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 568 n. 4 (2d Cir.2000) (finding that the fact that two individuals are engaged in similar discriminatory behavior is not enough to demonstrate a discriminatory policy or practice where the record does not indicate their behavior was related); *Alleyne,* 2001 WL 135770, at *8 (rejecting application of continuing violation exception because, in part, "[n]umerous different supervisors and decisionmakers from different departments were involved in the ... [allegedly discriminatory acts] and there is no evidence that their behavior was related in any way."). Indeed, the dissimilarities between the time-barred retaliatory acts—which primarily involve transfers, false charges, refusal to train, and denials of promotion and other privileges—and those taken after October 13, 1996—which primarily concern events surrounding his application for disability accidental retirement—militate against a finding that these acts are part of the same policy or practice. *See Salgado v. City of New York,* No. 00 Civ. 3667, 2001 WL 290051, **5–6 (S.D.N.Y. Mar.26, 2001) (stating that one of the relevant factors in determining whether there is a discriminatory policy or practice is whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation) (citing *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971 (5th Cir.1983)); *Riedinger v. D'Amicantino,* 974 F.Supp. 322, 326 (S.D.N.Y.1997) (same).

Plaintiff cannot now resurrect stale claims by stating that dissimilar acts are related. To hold otherwise would turn the continuing violation doctrine into a "boundless exception" to the statute of limitations. *Johnson v. Nyack Hosp.,* 891 F.Supp. 155, 165 (S.D.N.Y.1995). Accordingly, defendants' motion for summary judgment is granted with regard to all retaliatory incidents alleged to have occurred before October 13, 1996.

**2. Subject Matter Jurisdiction**

■ Defendants also argue that, pursuant to the *Rooker–Feldman* doctrine, this Court lacks subject matter jurisdiction over the timely-filed First Amendment claims that pertain to the denial of plaintiff's accidental disability retirement application. *See* Def. Mem. at 7–9. The *Rooker–Feldman* doctrine bars a federal court

from exercising subject matter jurisdiction over cases that effectively seek review of state court judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This prohibition extends to a federal claim that is "inextricably intertwined" with a state court judgment. *See Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303. "Claims are inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). Where a district court's grant of relief is predicated upon a determination that a state court ruling was incorrect "it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.; see also* 28 U.S.C. § 1257 (appellate review of state court judgments is available only in the United States Supreme Court).

 It is well-established in this Circuit that the *Rooker–Feldman* doctrine is co-extensive with the law of preclusion. Thus, "where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio v. Office of Court Admin.,* 95 F.3d 195, 199–200 (2d Cir.1996). The law of preclusion can be divided into two categories: res judicata (claim preclusion) and collateral estoppel (issue preclusion). Res judicata is not applicable to plaintiff's section 1983 claim. *See Colon v. Coughlin,* 58 F.3d 865, 870 n. 3 (2d Cir.1995) (res judicata does not bar a section 1983 action where a plaintiff has previously brought an Article 78 proceeding). However, under New York law, collateral estoppel will preclude a federal court from deciding an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* at 869. While the party asserting collateral estoppel has the burden of showing that the identical issue was previously decided, the party resisting preclusion bears the burden of demonstrating that he was denied a full and fair opportunity to litigate the issue in the prior proceeding. *See id.*

In *Moccio,* the plaintiff was terminated from his employment with the New York State Office of Court Administration ("OCA") following a disciplinary hearing by the OCA and an appeal to a deputy chief administrative judge. Moccio challenged his dismissal by filing an Article 78 petition. The court denied the petition, finding that there was substantial evidence to support the decision of the administrative judge. *See Moccio v. State,* 200 A.D.2d 574, 606 N.Y.S.2d 300 (2d Dep't 1994).

Moccio then filed a section 1983 suit in federal court, alleging race discrimination and violations of the Equal Protection Clause of the Fourteenth Amendment. *See Moccio,* 95 F.3d at 198. The district court dismissed the suit sua sponte, holding that the *Rooker–Feldman* doctrine prevented it from exercising jurisdiction. The Court of Appeals upheld the dismissal even though Moccio did not raise the precise claims that were the subject of his section 1983 action in the Article 78 proceeding. The court concluded that issues central to both his equal protection and due process claims were necessarily decided adversely to him in the Article 78 proceeding. *See id.* at 201.

#### a. Plaintiff's First Amendment Claim Was Actually and Necessarily Decided

Crosland argues that the Article 78 proceeding did not concern his constitutional claim alleging violations of the First Amendment. *See* Pl. Mem. at 22–23. This argument is unpersuasive. Crosland's Article 78 petition specifically sought a "finding that respondent NYPD violated provisions of the First Amendment to the United States [Constitution]." Petition in *Crosland v. Safir*, Index No. 120197/98, Ex. D. to Glass Decl., ¶ 30.A.(v). Moreover, Crosland's petition complained of the inclusion of documents from his personnel file—specifically, a document concerning the January 1986 altercation—in his medical folder. *See id.* ¶ 28. Plaintiff relies on the same allegation in his federal complaint. *See* Am. Compl. ¶ 41. In short, Crosland had an adequate opportunity to litigate the reasons for the Medical Board's refusal to award him accidental disability retirement and specifically asserted the First Amendment retaliation argument in his state court proceeding.[3]

The state court concluded that the Medical Board's decision to reject Crosland's application for accidental disability retirement was both rational and "based on credible medical evidence." *See* Order and Judgment in *Crosland v. Safir*, Ex. F. to Glass Decl., at 1, 5. A finding by this Court that Crosland was denied accidental disability retirement in retaliation for his protected speech would necessarily contradict the state court's determination. *See Hernandez v. City of New York*, No. 98 Civ. 7237, 2000 WL 145749, at *3 n. 5 (S.D.N.Y. Feb.7, 2000) (dismissing race discrimination claim pursuant to *Rooker–Feldman* doctrine even though petitioner did not raise race discrimination in his Article 78

proceeding because, in denying the Article 78 petition, the state court upheld the Police Pension Board's determination as supported by a rational basis); *Beharry v. M.T.A. New York City Transit Auth.*, No. 96 Civ. 1203, 1999 WL 151671, at *8 (S.D.N.Y. Mar. 17, 1999) ("[A]s a predicate to the state court's determination that the Authority's dismissal of Beharry was 'rational', the state court necessarily determined that the urinalysis test was administered under constitutional conditions .... To find otherwise would require this Court to conclude that the state court's decision upheld a constitutionally infirm (and thus inherently) irrational dismissal action ...."), *aff'd*, No. 99–7717, 2000 WL 1786333 (2d Cir. Dec.6, 2000); *Marden v. Dinin*, 22 F.Supp.2d 180, 185–86 (S.D.N.Y. 1998) (barring First Amendment claim under *Rooker–Feldman* doctrine because plaintiff argued in the Article 78 proceeding that his termination was retaliatory, arbitrary, and capricious).

#### b. Plaintiff Had a Full and Fair Opportunity to Litigate

█ The second prong of the collateral estoppel analysis requires plaintiff to show the absence of a full and fair opportunity to litigate the issues in the prior proceeding. *See Colon*, 58 F.3d at 869. This determination requires consideration of the size of the claim in the prior proceeding, the forum of the prior proceeding, the extent of the prior litigation, and the availability of evidence now that was unavailable at the time of the prior proceeding. *See Moccio*, 95 F.3d at 202.

Plaintiff has not argued that he was not afforded a full and fair opportunity to litigate these issues in the prior proceeding. Any such argument would ring hollow. Plaintiff was represented in the Article 78

---

**3.** Indeed, in his motion for reargument, Crosland argued that the Medical Board's decision was a "retaliatory action" that violated the

First Amendment, and that inclusion of his personnel records in his medical file evidences "bad faith". Def. 56.1 ¶ 16.

proceeding. Indeed, after Justice McCooe denied his petition, plaintiff's counsel filed a motion for reargument. Moreover, plaintiff could have fully litigated his constitutional claims in the Article 78 proceeding. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996). Finally, plaintiff neither claims that he was barred from presenting evidence in support of the First Amendment claim nor asserts that he has new evidence that was unavailable to him at the time of the Article 78 proceeding. Where a party is afforded a full and fair opportunity to litigate a claim in a prior proceeding, subsequent litigation of that claim is barred. *See Colon*, 58 F.3d at 869. Accordingly, plaintiff's claim that his First Amendment rights were violated by the denial of his application for accidental disability retirement is dismissed for lack of subject matter jurisdiction.

### 3. The Prima Facie Case

 The only remaining claims of retaliation in violation of the First Amendment involve the alleged harassment by Absence Control and the towing of plaintiff's van from his driveway. Construing the facts in the light most favorable to him, plaintiff has failed to satisfy the elements of a prima facie case for these two remaining claims.

 To prevail on a First Amendment retaliation claim, a public employee must establish: (1) that the speech at issue was protected; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected speech and the adverse employment action. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir.2000). The causal connection must be sufficient to support the inference that the speech played a "substantial" or "motivating" part in the employer's adverse employment action.

*Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 780–81 (2d Cir.1991).

Plaintiff has failed to satisfy the second and third prongs of this test. *First*, neither the alleged harassment nor the towing of his van constitute adverse employment actions. *See Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir.2001) (" 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech [is] always actionable.' ") (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982)); *United States v. New York City Transit Auth.*, 97 F.3d 672, 677 (2d Cir.1996) (holding that adverse employment action must affect the plaintiff's work, working conditions, or compensation). *Second*, plaintiff has presented no evidence from which to reasonably infer that these actions are in any way causally connected to his protected speech. Plaintiff's speech occurred fourteen years before the retaliatory conduct, a consideration which attenuates the required causal connection. *See Uddin v. New York City*, No. 00 Civ. 3417, 2001 WL 15694, at *6 (S.D.N.Y. Jan.8, 2001) (rejecting inference of retaliation because adverse employment action was taken over one year after plaintiff engaged in protected activity). Moreover, plaintiff has not demonstrated that any of the actors responsible for these actions knew of plaintiff's speech.[4] *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000) ("The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection . . . ."). Accordingly, the remaining First Amendment retaliation claims are dismissed.

### B. Plaintiff's Remaining Claims

 Defendants have also moved to dismiss each of plaintiff's remaining ten

---

4. Indeed, plaintiff has not named the individuals responsible for these actions.

claims. Plaintiff has not addressed defendants' arguments and appears to have abandoned the claims. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F.Supp. 1114, 1129 (S.D.N.Y.1993). Even if not abandoned, each claim is defective for the reasons discussed in defendants' memorandum of law, as summarized below:

1. The Due Process claim (claim II) is barred by the *Rooker–Feldman* doctrine. Furthermore, the Article 78 proceeding provided petitioner with all the process that was due. *See Gudema v. Nassau County*, 163 F.3d 717, 725 (2d Cir.1998);

2. The race discrimination claims (claims III–VII) are both time-barred and barred by the *Rooker–Feldman* doctrine. In addition, plaintiff has failed to establish a prima facie case of racial discrimination because he has not demonstrated that the NYPD took adverse employment actions against him under circumstances that could lead to a reasonable inference of intentional discrimination;

3. The disability discrimination claims (claims VIII and IX) are brought only under state law and the Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir.

2000) (directing dismissal of supplemental state law claims where no federal claims remained);[5]

4. The claims that defendants violated federal and state labor laws (claims X and XI) are defective because they are time-barred and plaintiff has rested on conclusory allegations devoid of any specificity. Furthermore, plaintiff has failed to give the New York State Attorney General notice of the state-law claim, as required by N.Y. Lab. Law § 215(2) (McKinney Supp.2000).

## IV. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to close this case.

SO ORDERED.

**5.** Defendants did not specifically address plaintiff's disability discrimination claims. Nonetheless, I note that the claim is completely unsupported by plaintiff's allegations. Plaintiff alleges that his injury disabled him such that he was unable to continue working. *See* Am. Compl. ¶¶ 86, 89. This is an absolute defense to plaintiff's claim that defendants failed to accommodate his disability. *See McEniry v. Landi*, 84 N.Y.2d 554, 559, 620 N.Y.S.2d 328, 644 N.E.2d 1019 (1994) (holding that employer may rebut claim of disability discrimination by showing that plaintiff's "disability render[ed] him incapable of performing in a reasonable manner the activities involved in the job.") (quotation marks omitted). Moreover, the Amended Complaint states that plaintiff was forced to retire because of his "concern[] that defendants were continuing their harassment of him." Am. Compl. ¶ 97. Plaintiff never alleges that he was forced to retire because of defendants' failure to accommodate his disability.