**Dean Paul MARINELLI, Plaintiff,**

v.

**Elaine L. CHAO, Secretary, Department of Labor, Defendant.**

**No. 00 CIV. 1297(VM).**

United States District Court, S.D. New York.

Oct. 10, 2002.

Dean Paul Marinelli, New York City, pro se.

Ross E. Morrison, Mary Jo White, U.S. Attorney, S.D.N.Y., New York, for Elaine L. Chao, Secretary, Department of Labor, defendant.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff, Dean Paul Marinelli ("Marinelli"), commenced this action invoking this Court's federal question jurisdiction to assert claims of disability and age discrimi-nation against his employer, the United States Department of Labor Bureau of Labor Statistics ("BLS" or the "Government"). The Government moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. By Order dated September 30, 2002 the Court granted the Government's motion and indi-cated that the Court's reasoning would be set forth in a subsequent Order. The September 30, 2002 Order is amended to incorporate the reasons below. On this basis, the Government's motion is granted.

## I. BACKGROUND

■■■ At the outset, the Court notes that the factual assertions appearing in Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s Rule 56.1 Statement") and accompanying exhib-its exceed those identified in his amended complaint. A civil complaint delineates the outer boundaries of a civil action, providing notice to defendants and thereby affording them a fair opportunity to respond and prepare for trial. *See Simmons v. Abruz-zo,* 49 F.3d 83, 86 (2nd Cir.1995); *Salahud-din v. Cuomo,* 861 F.2d 40, 42 (2nd Cir. 1988). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Its contents must be suf-ficiently clear and precise so as to meet these ends and must not rely merely on vague and conclusory allegations which disguise their true substance. *See* Fed. R.Civ.P. 8(e)(1); *Simmons,* 49 F.3d at 86; *Coakley v. Jaffe,* 49 F.Supp.2d 615, 625 (S.D.N.Y.1999). Subsequent filings serve to develop and clarify those issues and assertions, but a party may not assert or develop allegations not contained in the complaint. *See Adams v. Monroe County Dep't of Social Services,* 21 F.Supp.2d 235, 238 (W.D.N.Y. 1998); *See also LaLonde v. Bates,* 166 F.Supp.2d 713, 719 (N.D.N.Y. 2001) (noting that it is insufficient when

plaintiff fails to state particular claims in complaint, first mentioning them in attorney's affidavit in opposition to motion for summary judgment).

 Thus, for present purposes, the Court will not address those portions of Marinelli's Rule 56.1 Statement that exceed the "clear and concise" allegations in the amended complaint. Furthermore, to the extent that the amended complaint itself contains partially or completely vague and conclusory averments, particularly where Marinelli asserts his two causes of action, those averments will be recognized as referring only to events and claims that have been delineated elsewhere in the amended complaint with proper clarity and, if applicable, developed thereafter during discovery. *See Salahuddin,* 861 F.2d at 42 ("When a complaint does not comply with Rule 8, the district court has the authority to strike any immaterial portions, or to dismiss the complaint.").

Marinelli was hired as a temporary clerk typist with BLS on January 20, 1987 at the age of 37.[1] He became a permanent employee on October 20, 1989 and assumed the position of statistical clerk on November 19, 1989. In September of 1992, Marinelli was diagnosed with anxiety, colitis, irritable bowel syndrome, hypoglycemia, chronic fatigue syndrome, and certain allergies. He submitted to his supervisor at the time, Andrew Donahue, documentation from his doctors identifying these diagnoses. In early 1993, Marinelli requested accommodations for his medical ailments, including flexibility in using the restroom in response to his irritable bowel syndrome and colitis and permission to eat small amounts of food during the day at his desk to control his hypoglycemia. This request was made verbally to Jesse Benjamin ("Benjamin"), his supervisor at that time, who did not respond. Marinelli then submitted a written request for these accommodations to Benjamin in February of 1994. Again, the requested accommodations were not provided.

From January through March of 1994, Marinelli was assigned to work as an administrative secretary. Because his primary responsibility was answering his supervisor's telephone calls, his mobility was considerably restricted. In May of 1994, Marinelli was reassigned to the position of office automation clerk. His new responsibilities as office automation clerk restricted his mobility much like his experience as administrative secretary. Marinelli alleges this transfer was in retaliation for his accommodation requests.

On April 30, 1995, the statistical clerk position Marinelli vacated was filled by a younger employee with less seniority. In response to what Marinelli believed was an improper motive for the transfer, namely, retaliation for his requesting the accommodations referenced above, Marinelli filed a union grievance on August 22, 1994. On August 23, 1994 and again in September of 1994, BLS denied Marinelli's request to be advanced sick leave time, leaving Marinelli to use annual leave time instead.

On August 24, 1994, Marinelli and a union representative met with Marinelli's supervisor at the time, Martin Karlin ("Karlin"), in response to his union grievance. At this meeting, Marinelli again requested a disability accommodation, specifically, to be allowed to eat as needed throughout the day. This request went unanswered.

On January 18, 1995, Marinelli returned one and one-half hours late from his lunch break, during which he had scheduled a medical appointment. On his return to work, Karlin told him that he would be marked absent without leave and docked double pay for that period. Two days later Karlin changed his mind. He informed Marinelli that he would not be docked any pay or marked absent without leave and, instead, provided him with a written warning and allowed Marinelli to use annual leave time to account for the time away from work.

On February 2, 1995, Marinelli filed an informal complaint with the Equal Employment Opportunity Commission ("EEOC") in which he reported his job reassignments, his denial of accommodations, and his restricted advance sick leave based on disability and age. On March 8, 1995, Marinelli filed another union grievance challenging his new duties at work and asserting that they aggravated his medical conditions. This grievance was denied on April 14, 1995. On April 24, 1995, Marinelli appealed this outcome to the United States Department of Labor, Office of Civil Rights.

Marinelli submitted to Karlin another request for accommodations on March 10, 1995 in which he asked not to have to answer telephones, to be allowed to eat throughout the day, and to take lavatory breaks as needed. This request was denied on the grounds that Marinelli's medical documentation was outdated in that it was more than six months old. On May 24, 1995, following a inquiry by an Equal Employment Opportunity ("EEO") counselor, Marinelli filed a formal complaint with the EEOC, reasserting his claims of discrimination. In June–July of 1995,

Marinelli gave permission for a physician affiliated with the United States Department of Labor ("DOL") to consult with his personal physicians for purposes of investigating Marinelli's discrimination complaint. In a letter submitted to the EEO counselor assigned to Marinelli's complaint, Dr. Ronald Fine reported his conclusion that Marinelli's medical status warranted reasonable accommodation.

On July 12, 1995, the Marinelli received from DOL's Directorate of Civil Rights ("Directorate") a notice, in response to Marinelli's EEOC complaint, explaining that the Directorate accepted for investigation the January 18, 1995 response by Marinelli's employer to Marinelli's tardy return from lunch.[2] This incident is discussed in the EEO counselor's report prepared on May 16, 1995 pursuant to Plaintiff's informal EEOC complaint. Marinelli then wrote the Directorate to ask that the other incidents he reported be investigated as well. The Directorate reiterated its refusal, explaining that the reassignment issues were not reported to an EEO counselor in a timely fashion. Marinelli appealed this decision to the EEOC, which affirmed the Directorate on August 23, 1996.

On September 8, 1998, an Administrative Law Judge with the EEOC recommended that Marinelli's claim of discrimination arising out of his tardy return from lunch on January 18, 1995 be dismissed, as Marinelli was never marked absent without leave or docked any pay. The EEOC affirmed this conclusion on October 12, 1999. In the meantime, Marinelli submitted further updated medical documentation of his ailments to his new supervisor, Hiram Quintana ("Quintana"), and requested accommodations once again on

---

**2.** Except where otherwise specifically indicated, the factual recitation that follows derives primarily from the sources identified in note 1 *infra* and from the Declaration of Ross E. Morrison In Support of Defendant's Motion for Summary Judgment, dated March 19, 2002 ("Morrison Decl."), and accompanying exhibits.

June 29, 1999. Specifically, Marinelli asked Quintana to instruct Marinelli's co-workers not to "harass and antagonize" him regarding his morning work schedule, pursuant to which Marinelli begins his day later than normal, and to moderate the office air conditioning. Marinelli states that he was never accommodated. Also on October 12, 1999, at the conclusion of Marinelli's appeals with the EEOC, he was granted a right to sue letter, and commenced this action on February 22, 2000.

Marinelli also alleges that certain annual performance award bonuses he received as a BLS employee were unfairly low. Specifically, in August of 1994, Marinelli received an award bonus of $150, whereas some individuals received bonuses of $300 or $500. He received the same bonus in August of 1995 and a $200 bonus in July of 1996, as well as in August of 1997.

■ Marinelli asserts two causes of action. First, for allegedly failing to provide reasonable accommodations, Marinelli asserts a claim against BLS pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA").[3] For allegedly transferring him to the position of office automation clerk and filling his vacated statistical clerk position with a younger employee, Marinelli asserts a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").[4]

## II. DISCUSSION

### A. STANDARD OF REVIEW

A motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Rodriguez v. Hahn*, 209 F.Supp.2d 344, 346 (S.D.N.Y.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The role of the Court is not to resolve issues of fact but, rather, "to determine as a threshold matter whether there are genuine unresolved issues of material fact to be tried." *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2nd Cir.1989). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The nonmoving party "must support with specific evidence his assertion that a genuine dispute as to material fact does exist," *id.*, 477 U.S. at

**3.** Because the United States is specifically excluded from the definition of employer under the ADA, *see* 42 U.S.C. § 12111(5)(B)(I), Marinelli's claim under the ADA will be countenanced as a claim pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). *See Rivera v. Heyman*, 157 F.3d 101, 103–104 (2nd Cir.1998) ("As a federal employee, Rivera has no remedy for employment discrimination under the ADA.... His sole claim for discrimination on the basis of disability is under the Rehabilitation Act, if anywhere." (citation omitted)).

**4.** In asserting his claims, Marinelli refers to the specific event constituting the underlying basis of each, namely, failure to accommodate and job transfer, respectively, and in addition refers only generally to "harassment, retaliation, and disparate treatment." For the reasons explained above, these latter vague and conclusory assertions will be understood as importing only those other incidents delineated in the amended complaint with adequate specificity and, if applicable, properly developed thereafter during discovery, namely, the limitation on advanced annual sick leave time, the amount of annual performance award bonuses, and BLS's response to Marinelli's tardy return from lunch in January of 1995.

324, 106 S.Ct. 2548, and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2nd Cir.1998). The opposing party's showing of a genuine dispute must be grounded in concrete evidence sufficient to support a reasonable jury's rendering a verdict in his favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All ambiguities and inferences drawn from the underlying facts must be resolved in the light most favorable to the party opposing the motion. *See United States v. One Tintoretto Painting Entitled "The Holy Family With Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2nd Cir.1982) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

The Court is "mindful that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated.... The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir.1985); *accord Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2nd Cir.1998).

## B. INCIDENTS OF ALLEGED DISCRIMINATION THAT OCCURRED PRIOR TO THE FILING OF INFORMAL COMPLAINT WITH THE EEOC

The Government argues that Marinelli's claims, apart from the one arising out of the January 18, 1995 incident in which Marinelli returned to work late from lunch, must be dismissed because Marinelli failed to exhaust his administrative remedies before filing his civil complaint. Specifically, the Government claims Marinelli failed to report these other incidents to the EEOC within 45 days of learning of them, as required by EEOC regulations.[5]

Regarding the January 1995 incident, the Government argues that that incident cannot constitute a valid basis for a discrimination claim because Marinelli never suffered an adverse employment action. Marinelli maintains that each of his claims was properly reported to the EEOC in that: (1) he was not aware, prior to February of 1995, that EEOC regulations required reporting of incidents within 45 days, (2) all of the incidents of which he complains are part of the same continuing violation, and (3) all of the incidents underlying his claims are "reasonably related" to the January 1995 incident which was timely reported to the EEOC.[6] The Court agrees with the Government and dismisses Marinelli's claims of discrimination arising out of incidents occurring prior to February 2, 1995.

 Exhaustion of administrative remedies is a precondition to civil suit under both the Rehabilitation Act and the ADEA. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82–83 (2nd Cir.2001) (ADEA); *Downey v. Runyon*, 160 F.3d

---

**5.** The Government's arguments are set forth in Defendant's Memorandum of Law In Support of Motion for Summary Judgment ("Def.'s Brief"), at 9–11.

**6.** Marinelli's arguments are set forth in his Memorandum of Law In Opposition to Defendant's Motion for Summer Judgment ("Pl's Brief"), 3–7.

139, 145–46 (2nd Cir.1998) (Rehabilitation Act). "The purpose of the requirement of primary resort to the EEOC is to provide notice to the employer and to encourage conciliation and voluntary compliance." *DeJesus v. Allstate Ins. Co.*, No. 96–CV–6073, 2001 WL 1006653, at *6 (S.D.N.Y. August 30, 2001) (citing *Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2nd Cir. 1986)). To exhaust such claims, the underlying incident must be properly reported to the EEOC. The Code of Federal Regulations requires that incidents of alleged discrimination be reported to the EEOC within 45 days of their occurrence. *See id.;* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."). Marinelli effectively concedes that he did not report the pre–1995 incidents of alleged discrimination to the EEOC in accordance with § 1614.105(a)(1). (*See* Pl.'s Brief, at 4) ("As soon as Plaintiff learned of the existence of the EEO in early 1995, he contacted them ....") Nonetheless, Marinelli proposes three reasons why his claims arising out of these incidents should not be dismissed, each of which is addressed in turn.

1. *Plaintiff Knew or Should Have Known About the Relevant EEOC Regulations*

Marinelli argues that he was unaware of the 45–day reporting window embodied in § 1614.105(a)(1) prior to early 1995 and that, therefore, pursuant to 29 C.F.R. § 1614.105(a)(2), his claims arising out of incidents that occurred prior to 1995 are not time-barred. The Government ar-

gues the Marinelli had actual or constructive notice of the EEOC reporting regulations in light of 29 C.F.R. § 1614.102(b)(7), which requires federal agencies like BLS to "[p]ublicize to all employees and post *at all times* the names, business telephone numbers and business addresses of the EEO Counselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted), *a notice of the time limits* and necessity of contacting a Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers." 29 C.F.R. § 1614.102(b)(7) (emphasis added). The Court agrees.

Marinelli is correct that § 1614.105(a)(2) provides for an extension of the 45–day filing requirement when a complainant establishes that he did not know and reasonably could not be expected to have known about this requirement. The Court finds that Marinelli has failed to make such a showing, however. As the Government points out, in accordance with § 1614.102(b)(7), DOL displayed posters describing the EEOC's services, contact information, and reporting requirements on bulletin boards both inside and outside the BLS offices at 201 Varick Street in New York City throughout Marinelli's employment.[7] One such poster is located on a bulletin board situated on the way from the entrance to the BLS offices to the men's restroom. Additionally, this same information appears in an employee handbook that all DOL employees receive at the commencement of their employment. Further, the DOL distributed brochures explaining the EEO process to all of its employees in 1992. Finally, the collective

---

7. The Government's response is supported by the Reply Declaration of Sheila Manigault In Support of Defendant's Motion for Summary Judgment ("Manigault Dec."), at ¶¶ 3–7; Reply Declaration of Cheyrlann F. DeLaurentis In Support of Defendant's Motion for Summary Judgment ("DeLaurentis Decl."), at ¶¶ 6–11, and accompanying exhibits.

bargaining agreements that cover office automation clerks and statistical clerks include provisions that reference EEO services.

In light of the various sources of information[8] about the EEOC, its services, contact information, and reporting requirements, the Court concludes that Marinelli knew or should have known about EEOC's existence and its regulations in time to comply with the applicable reporting requirements with respect to each incident of discrimination he alleges. This Court has previously explained that "a plaintiff may not establish a failure of notice exception to the 45 day time limit merely because he chose not to acquaint himself with the substance of an EEO notification." *German v. Pena*, 88 F.Supp.2d 216, 221 (S.D.N.Y.2000). In fact, the Second Circuit has stated that "a court can presume knowledge of statutory rights based on [posted] notices." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2nd Cir.1986).

Marinelli cites to *Briggs v. Henderson*, 34 F.Supp.2d 785 (D.Conn.1999), for the proposition that his supervisors at BLS had a duty to specifically inform him about the EEO process when he met with them to report a given incident of alleged discrimination. *Briggs* stands for no such rule. Rather, the dispute in *Briggs* centered on whether that plaintiff's meeting with two supervisors on the same day as an incident of sexual harassment, her contacting the police, crisis prevention, and her employer's Employee Assistance Program, as well as her filing a grievance with her union steward all within one week, sufficed to place her employer on notice of her intent to pursue an EEO action. *See id.* at 788. Accordingly, Marinelli's reliance on *Briggs* is misplaced.

### 2. The "Continuing Violation" Doctrine Is Unavailing on the Facts of This Case

Marinelli also argues that his pre–1995 claims are not time-barred because they, together with the January 18, 1995 incident, constitute a single "continuing violation," and that Marinelli's report of discrimination on February 2, 1995 concerning the January 18, 1995 incident actually imported this entire series of prior incidents. The Government argues that the continuing violation doctrine is not applicable to the facts of the present case. The Court agrees.

 Under the continuing violation exception, if a

> plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.... The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists ... or discriminatory employment tests .... However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.

*Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2nd Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994) (citations omitted; internal quotations omitted); *see Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 82–83 (2nd Cir.2001); *Vergara v. Bentsen*, 868 F.Supp. 581, 590 (S.D.N.Y.1994). The exception also applies to "specific and related acts that are tantamount to such customs

---

**8.** The Court notes that, in the face of these sources of information, Marinelli makes no argument that he did not have access to the areas in which the posters were located or that he never received copies of the brochures, handbook, or collective bargaining agreements.

or policies." *Weeks*, 273 F.3d at 83; *Benjamin v. New York City Dep't of Health*, No. 00–CV–0211, 2002 WL 485731, at *6 (S.D.N.Y. March 29, 2002); *Vergara*, 868 F.Supp. at 590 (citing *Cornwell v. Robinson*, 23 F.3d 694, 704 (2nd Cir.1994)).

Apart from certain vague and conclusory assertions of continuous harassment and discrimination, Marinelli specifically identifies five events prior to the filing of his informal EEOC complaint that he alleges to be discriminatory: the refusal by his supervisors to grant him accommodations that he requested verbally in early 1993 and in writing in February of 1994; his reassignment to the position of office automation clerk in March of 1994; a $150 bonus in August of 1994 that Marinelli maintains was unfairly low; denials of advance sick leave in August and September of 1994; and his supervisor's response to his tardy return from lunch on January 18, 1995. The last incident was the only one that Marinelli timely reported to the EEOC. In order to serve as a hook for the rest, Marinelli must show not only that the five prior incidents were so continuous, related, and extensive as to constitute the functional equivalent of a discriminatory policy or mechanism, but also that the January 1995 incident which actually was reported in a timely manner occurred in furtherance of such a functional policy or mechanism.

Courts in this District have generally adopted the Fifth Circuit's approach in *Berry v. Bd. of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986), when evaluating the continuity of a series of allegedly discriminatory incidents. *See e.g., Little v. Nat'l Broad. Co., Inc.*, 210 F.Supp.2d 330, 366 (S.D.N.Y.2002); *Draeger v. Bronx-Lebanon Hosp. Ctr.*, No. 98–CV–3688, 1999 WL 562103, at *4 (S.D.N.Y. August 2, 1999); *Simmons v. AT & T*, No. 96–CV–2844, 1998 WL 751659, at *5 (S.D.N.Y.

October 28, 1998). In *Berry*, the Fifth Circuit discussed an unexhaustive list of three factors to consider:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981.

In applying these criteria, the Court recognizes that "[c]ompleted acts such as a termination through discharge or resignation, a job transfer or discontinuance of a particular job assignment, are not acts of a 'continuing' nature .... Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment ...." *Little*, 210 F.Supp.2d at 366 (citations omitted; internal quotations omitted) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2nd Cir.1999)). Overall, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Id.*, (internal quotations omitted) (quoting *Falinski v. Kuntz*, 38 F.Supp.2d 250, 257 (S.D.N.Y.1999)).

The Court finds that the incidents preceding Marinelli's informal EEOC com-

plaint do not represent the functional equivalent of a discriminatory policy or mechanism. First, Marinelli's request for accommodations is alleged to have been discrimination based on disability, (*see* Amended Compl., at ¶ 35), while his job transfer is alleged to have been discrimination based on age, (*id.* at ¶ 38). Marinelli does not clearly identify the denials of advance sick leave, the low bonus, and the January 18, 1995 lunch incident as one or the other. (*Id.,* at ¶¶ 16A,[9] 19, 20 23(c).) This lack of uniformity counsels against finding that these incidents constitute a single continuing violation.

Additionally, while Marinelli specifies two instances of denied advance sick leave and two requests for accommodations, the incidents of alleged discrimination preceding Marinelli's informal EEOC complaint, taken in their entirety, do not reflect any common behavior or plan of action on the part of BLS that is specifically identifiable, Marinelli's general and conclusory claims of "harassment" and "retaliation" notwithstanding. (*Id.,* at ¶¶ 35, 38.) In other words, these incidents are generally independent of one another. Regarding the January 18, 1995 incident, the one that was timely reported to the EEOC, it is undisputed that Marinelli returned from lunch late, with no prior notice or permission, and was threatened by his supervisor to be marked absent without leave, a threat that was then withdrawn. Again, this sequence of events has no discernible parallel to those comprising the preceding incidents of alleged discrimination, which leads the Court to conclude that it, too, was independent of the rest.

Finally, Marinelli took it upon himself to advise his supervisors at BLS of his medical conditions as early as 1992. Accordingly, the effect of these diagnoses on his experience at work was of clear importance to him. When his requests for disability accommodations went unanswered, first in 1993 and again in 1994, there is no reason for Marinelli not to have recognized the permanence of such inaction. Moreover, when his position at BLS was temporarily adjusted from January through March of 1994 such that his new duties allegedly aggravated his medical ailments, Marinelli again should have recognized this change as an affront to his claimed disability status. The same conclusion should have been underscored for Marinelli when he was reassigned to the position of office automation clerk in May of 1994, in which many of the allegedly troublesome duties became permanent. Furthermore, when Marinelli was denied advance sick leave twice in less than one month's time and told scheduled absences would have to be covered using annual leave time instead, Marinelli again should have recognized this change as inconsistent with his medical needs. (*See id.,* at ¶¶ 19, 20.) For these reasons, the Court concludes that Marinelli had ample opportunity to recognize, and indeed should have recognized, the potentially discriminatory import of these pre–1995 incidents that Marinelli since has alleged in his amended complaint.

In the final analysis, while five incidents[10]—seven, if one counts both specified requests for accommodations and for advance sick leave separately—of alleged discrimination in the course of two to three

---

9. Marinelli's Amended Complaint contains two consecutive paragraphs numbered "16." The Court references the first of these two as "16A" and the second as "16B."

10. As noted above, the persistent effects of a given incident, such as a job transfer and,

here, denial of disability accommodations and advance sick leave, do not individually represent the continuity necessary for a continuing violation. *See Little,* 210 F.Supp.2d at 366; *Falinski,* 38 F.Supp.2d at 257.

years [11] are not inconsequential, the Court concludes that, upon consideration of the different types of claims asserted, the lack of common details or apparent purpose among the underlying sequences of events, and their evident permanence, the incidents of alleged discrimination that occurred prior to the filing of Marinelli's informal EEOC complaint do not reflect the kind of "compelling circumstances" that represent the functional equivalent of a discriminatory mechanism or policy. Furthermore, as no actual discriminatory mechanism or policy within BLS is alleged, the Court finds that the facts of this case do not present a continuing violation.

Marinelli's reliance on a continuing violation argument is unavailing for another reason. The United States Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan,* — U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), has abrogated the continuing violation doctrine in the context of discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq.* ("Title VII"), *see Coffey v. Cushman & Wakefield, Inc.,* No. 01–CV–9447, 2002 WL 1610913, at *2 (S.D.N.Y. July 22, 2002); *Gross v. Nat'l Broad. Co. Inc.,* No. 00–CV–5776, 2002 WL 1482621, at *7 (S.D.N.Y. July 10, 2002), employing reasoning that would seem to apply equally to ADEA and Rehabilitation Act claims.

Relying on the plain language of 42 U.S.C. § 2000e–5 (e)(1), providing that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred," the Supreme Court concluded that

discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.... The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.... The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for purposes of liability... With respect to this holding, therefore, we reverse.

*Id.,* at 2072–73.[12] In reaching this conclusion the Supreme Court reasoned that

[t]he operative terms [in § 2000e–5 (e)(1) ] are "shall," "after ... occurred," and "unlawful employment practice." "Shall" makes the act of filing a charge within the specified time period mandatory .... "Occurred" means that the practice took place or happened in the past. The requirement, therefore, that the charge be filed "after" the practice "occurred" tells us that a litigant has 180 ... days *after* the unlawful practice happened to file a charge with the EEOC.

*Id.,* at 2070 (citation omitted).

The plain language of 29 C.F.R. § 1614.105(a)(1) would seem to compel the same conclusion. As explained above, ex-

---

**11.** Marinelli was first diagnosed with various medical disorders central to his disability claims in 1992.

**12.** The Supreme Court added that "this time period for filing a charge is subject to equita-

ble doctrines such as tolling or estoppel." *Id.* at 2072 (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

haustion of administrative remedies is a precondition to civil suit under both the Rehabilitation Act and the ADEA. *See Holtz* 258 F.3d at 82–83 (ADEA); *Downey,* 160 F.3d at 145–46 (Rehabilitation Act). The EEOC is charged with enforcing the rights enumerated in both, *see* 29 U.S.C. §§ 628, 633a (b), 5 U.S.C. § 7702 (ADEA); 5 U.S.C.App. 1, § 4 (1978), 29 U.S.C. § 626 (Rehabilitation Act), and § 1614.105(a)(1) requires that "[a]n aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." The operative terms here are "must" and "within 45 days," and they, too, seem to foreclose the notion that incidents occurring outside the limitation period, even if related to one or more occurring within it, can be made timely by virtue of that relationship. Marinelli offers no basis for this Court to distinguish *Nat'l R.R. Passenger Corp.* and conclude otherwise. At any rate, this Court need not conclude definitively whether the Supreme Court's holding in *Nat'l R.R. Passenger Corp.* extends beyond the Title VII context because, for the reasons discussed above, even if the continuing violation exception survives in the ADEA and Rehabilitation Act contexts, that exception is inapplicable to the facts of the present case.

3. *The Untimely Pre–1995 Claims Are Not "Reasonably Related" to the Timely Reported January 18, 1995 Incident*

Marinelli also argues that the pre–1995 incidents are "reasonably related" to the January 18, 1995 claim that was timely reported to the EEOC so as to be deemed part of that report. The Court disagrees.

An untimely claim is considered "reasonably related" to one that was timely reported to the EEOC when it "(1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge; (2) alleges conduct which would constitute retaliation for filing a timely EEOC charge; and (3) alleges conduct which would constitute a further incident of discrimination perpetrated in precisely the same manner as what is alleged in the EEOC charge." *DeJesus,* 2001 WL 1006653, at *6; *see Butts v. City of New York Dep't of Hous.,* 990 F.2d 1397, 1402–1403 (2nd Cir.1993); *Burgos v. Sullivan & Cromwell,* 99–CV–11437, 2001 WL 709268, at *5 (S.D.N.Y. June 25, 2001).

The third variation lends no support to Marinelli's position because a comparison of the January 18, 1995 incident with the rest raised by Marinelli reveals distinct differences. These differences are readily apparent in the Court's description of each incident in Section I. *infra,* and they need not be restated here.[13]

The first variation is equally unavailing because of the apparent weakness of Marinelli's claim of discrimination arising out of the January 18, 1995 incident. In order to maintain that discrimination claim, Marinelli must establish, inter alia, that he suffered an "adverse employment action." *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 54 (2nd Cir.2002) (Rehabilitation Act); *Raskin v. The Wyatt Co.,* 125 F.3d 55, 63–64 (2nd Cir.1997) (ADEA).[14] Marinelli admits

13. This conclusion applies to each incident preceding as well as succeeding the January 18, 1995 incident.

14. This Court has explained that, while determining what constitutes an adverse employment action is highly fact specific, "courts have set forth the following list of factors to

help determine whether an employment action is materially adverse: [a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibili-

that, despite his supervisor's assertion immediately upon his tardy return from lunch, he never was marked absent without leave and instead was issued a warning and allowed to account for the missed work time with accrued annual leave time. As the Administrative Law Judge who heard Marinelli's report arising out of the January 18, 1995 incident concluded, Marinelli was not harmed or aggrieved by his employer's response to his tardy return from lunch on that date because he never in fact was marked absent without leave. (Morrison Decl., at Ex. J.) Therefore, Marinelli failed to establish a prima facie claim of discrimination given that, on the undisputed facts, no requisite adverse employment action occurred. *See Carter v. New York City Dep't of Corr.*, 7 Fed. Appx. 99, 103 (2nd Cir.2001) ("because none of the [discussed] disciplinary actions were actually adjudicated or resulted in punishment against [the plaintiff], he is unable to show that he suffered an adverse employment action.") (citing *Yerdon v. Henry*, 91 F.3d 370, 378 (2nd Cir.1996)). The Administrative Law Judge accordingly dismissed Marinelli's complaint for failure to state a claim, (*id.*, at Ex. J), and the EEOC affirmed this decision on appeal, (*id.*, at Ex. K.) Because Marinelli failed to state a cause of action in his report of the January 18, 1995 incident, the ensuing EEOC investigation cannot reasonably be expected to encompass much, if anything, beyond the circumstances of the missing element of his claim. Accordingly, the pre–1995 incidents alleged by Marinelli cannot reasonably be expected to lie "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge," *DeJesus*, 2001 WL 1006653, at \*6, because that investigation is truncated by Marinelli's failure to state a prima facie case. The Court finds that the pre–1995 incidents are not reasonably related to the January 18, 1995 incident on this basis.[15]

The remaining formulation of what constitutes a "reasonable relationship" imports "conduct which would constitute retaliation for filing a timely EEOC charge." *DeJesus*, 2001 WL 1006653, at \*6. To qualify under this formulation, the retaliation must be in response to the filing of the EEOC charge, meaning that it must come after a report is filed with the EEOC. *See id.* ("[T]o the extent that any retaliatory ... conduct is alleged, it occurred before plaintiff was terminated by [the defendant], and this was several months before the filing of the charge with the EEOC."); *Oshinsky v. New York City Hous. Auth.*, No. 98–CV–5467, 2000 WL 218395, at \*6 (S.D.N.Y. February 23, 2000) ("Because these acts ... predate plaintiff's first EEOC filing, they cannot be reasonably related by being subsumed in the category of 'retaliation against an employee for filing a charge with the EEOC.'" (citations omitted; internal quotations omitted)). Accordingly, the Court finds that the pre–1995 claims are not "reasonably related" to the January 18, 1995 incident because they occurred in advance of this incident and thus predate the informal EEOC complaint filed on February 2, 1995 that reported it.

---

ties, or other indices that might be unique to a particular situation.... [N]ot every unpleasant matter creates a cause of action, including insubstantial changes in an employee's work conditions.... Thus, the change must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Fridia v. Henderson*, No. 99–CV–10749, 2000 WL 1772779, at \*6 (S.D.N.Y. November 30, 2000) (citations omitted; internal quotations omitted).

**15.** This conclusion applies to incidents of discrimination alleged by Marinelli that occurred after January 18, 1995 as well.

4. *Marinelli Fails to State a Prima Facie Claim of Discrimination Arising Out of the January 18, 1995 Incident*

 The response by BLS to Marinelli's late return from lunch, following a doctor's appointment that ran unexpectedly long, was the subject of timely complaint to the EEOC. As discussed in Section II. B(3) *infra*, however, Marinelli failed to establish a prima facie claim of discrimination under either the Rehabilitation Act or the ADEA arising out of this incident because the undisputed facts indicate that he was never actually marked absent without leave, and, therefore, suffered no adverse employment action. *See Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 54 (Rehabilitation Act claim requires adverse employment action); *Raskin*, 125 F.3d at 63–64 (ADEA claim requires adverse employment action); *Carter*, 7 Fed. Appx. at 103 (threatened disciplinary action that is never adjudicated and never resulted in punishment is not an adverse employment action); *Yerdon*, 91 F.3d at 378 (same). Having failed to state a claim, the Marinelli's claim arising out of the January 18, 1995 incident must be dismissed.

C. *MARINELLI'S CLAIMS OF DISCRIMINATION ARISING OUT OF INCIDENTS OCCURRING AFTER JANUARY 18, 1995 ARE NOT "REASONABLY RELATED" TO HIS FEBRUARY 2, 1995 EEOC COMPLAINT*

 As explained in Section II. B(3) *infra*, incidents of alleged retaliation in response to the filing of an EEOC complaint are understood to be "reasonably related" to the subject of that complaint and, accordingly, need not be reported to the EEOC in an independent additional complaint. *See DeJesus*, 2001 WL 1006653, at *6; *Butts*, 990 F.2d at 1402–1403; *Burgos*, 2001 WL 709268, at *5. The Second Circuit has explained the theory behind this exception as follows:

[I]n such situations, we have relaxed the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. . . . The EEOC already will have had the opportunity to investigate and mediate the claims arising from the underling discriminatory acts alleged. Due to the very nature of retaliation, the principal benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

*Butts*, 990 F.2d at 1402 (citation omitted). To establish a prima facie claim of retaliation, a plaintiff must show that he was "engaged in protected activity, that the [defendant] was aware of this activity, that the [defendant] took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 54 (internal quotations omitted) (citing *Sands v. Runyon*, 28 F.3d 1323, 1331 (2nd Cir.1994)); *Holtz* 258 F.3d at 79.

Here, the Government challenges the causal connection requirement, arguing that Marinelli's claims arising out of incidents subsequent to the filing of his informal EEOC complaint are not reasonably related to the January 18, 1995 incident that was reported to the EEOC nor to the informal EEOC complaint itself.

■ Marinelli may establish a causal connection "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." [16] *Raniola v. Bratton,* 243 F.3d 610, 625 (2nd Cir.2001); *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2nd Cir.2000). Marinelli does not argue or identify evidence of retaliatory animus, and, instead, endeavors to establish a causal connection indirectly.

For the reasons explained in Section I. *supra,* the Court will only recognize those causes of action properly pleaded in Marinelli's civil complaint.[17] Accordingly, the Court recognizes the following incidents as adequately pleaded: Marinelli's March 10, 1995 request for disability accommodations; his June 29, 1999 request for disability accommodations; and three annual performance award bonuses which Marinelli argues were unfairly low, one in August of 1995 for $150, one in July of 1996 for $200, and one in August of 1997 for $200. The Court addresses these claims in turn.

■ Regarding Marinelli's March 10, 1995 request for accommodations, Karlin, Marinelli's supervisor, explained to Marinelli in his April 13, 1995 response that the reason the request was rejected was that Marinelli's medical documentation was outdated according to procedures promulgated by DOL's Office of the Assistant Secretary for Administration and Management ("OASAM"). This procedural deficiency is undisputed. Because a procedural deficiency, and not the filing of Marinelli's informal EEOC complaint, accounts for BLS's rejection of Marinelli's accommodations request, the complaint and the rejected accommodations request are not causally connected and, therefore, are not reasonably related for exhaustion purposes.

Regarding Marinelli's June 29, 1999 accommodations request, the Second Circuit, as already discussed, recognizes as indirect evidence of a causal connection allegedly retaliatory incidents that followed "closely" the protected activity, which, here, is the filing of Marinelli's informal EEOC complaint on February 2, 1995. Marinelli's request for accommodations presently at issue was made on June 29, 1999, over four years later. While no bright line rule exists defining the outer boundaries of a temporal relationship asserted as evidence of a causal connection, *see Gorman–Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 554–55 (2nd Cir. 2001), such an extended interim period as this one precludes a finding of a causal

---

16. Marinelli argues that *Sims v. MME. Paulette Dry Cleaners,* 580 F.Supp. 593 (S.D.N.Y. 1984), stands for the proposition that unequal treatment "before and after the protected activity," here, the filing of an EEOC complaint, can be considered as indirect evidence of retaliation. Marinelli misconstrues this case. In *Sims,* what existed "before and after" that plaintiff's EEOC complaint was the plaintiff's allegedly disruptive behavior at work. Nonetheless, in reaching its conclusion, the court made it clear that the "[d]efendants' open acknowledgment ... that they knowingly and deliberately *changed* the way they treated [the plaintiff] *because she filed* an EEOC complaint

is sufficient to support a finding of unlawful retaliation." *Id.,* at 596 (citations omitted; emphasis added). The highlighted language clearly shows that the court relied on conduct subsequent to the protected activity, which, there, as here, was the filing of an EEOC complaint.

17. Also as explained in Section I. *supra,* subsequent development of the facts through discovery can expand upon such properly identified causes of action, but it cannot compensate for vague and conclusory pleading in the complaint.

connection on this basis and, in turn, a reasonable relationship. *See Morris v. Lindau,* 196 F.3d 102, 113 (2nd Cir.1999) ("since two years elapsed ... no inference of causation is justified.").

■ Regarding the performance award bonuses that Marinelli claims were unfairly low, the Court notes that his performance evaluations for the relevant years was "Fully Successful." (Pl.'s Rule 56.1 Statement, at Ex. I.) This rating is the third on a scale of five, with the first being "Unacceptable Performance" and the fifth being "Outstanding Performance." (*Id.*) An employee receives a "Fully Successful" rating when "[p]erformance meets the described level in the performance standards for all critical elements," and an "Outstanding" rating when "[p]erformance exceeds the described level in the performance standards for all critical elements and for 50 percent of the other elements. Performance does not fall below the standard for any element of the job." (*Id.*) Hiram Quintana, a manager at BLS, testified in his deposition in this case that not all employees receive annual performance award bonuses. (Quintana Dep., at 153.) He further explained that performance award bonuses are "never a large amount," and that a "large amount" would be "three hundred and up." (*Id.* at 154–55.) Quintana stated that the highest award he knew of was $500 and that "[u]sually the professionals are the ones with that money," and he further explained that Marinelli's award of $150 in August of 1994 was "not unusual." (*Id.*) Taking Quintana's explanation, specifically, that not all employees receive performance award bonuses and that $300 is a high award while $150 is a usual one, with the fact that Marinelli's performance was at the relevant times rated, essentially, a

three on a scale of five, his award bonuses of $150 in August of 1995, $200 in July of 1996, and $200 in August of 1997 do not constitute adverse employment actions as this concept is explained in Section II.B (3) *supra.*[18] Accordingly, Marinelli has failed to state a prima facie claim of discrimination with respect to each of these incidents. *See Reg'l Econ. Cmty. Action Program, Inc.,* 294 F.3d at 54 (Rehabilitation Act); *Raskin,* 125 F.3d 55, 63–64 (ADEA).

D. *THE INFORMAL EEOC COMPLAINT DOES NOT SATISFY THE EXHAUSTION REQUIREMENT NECESSARY FOR PLAINTIFF TO MAINTAIN HIS CIVIL CLAIMS*

■ In spite of all the foregoing reasoning, the Court recognizes an independent basis for granting the Government's motion for summary judgment in full. The Government asserts that the facts of the January 18, 1995 lunchtime incident indicate that the Marinelli suffered no adverse employment action. The court agrees for the reasons elaborated in Section II. B(4) *infra.* The Government then argues that because none of the other incidents of alleged discrimination were timely reported to the EEOC, they must be dismissed on exhaustion grounds, reasoning that none of these other claims should be excepted from the exhaustion requirement when the only claim to which they purportedly are "reasonably related," or with which they constitute a "continuing violation," is one for which not even a prima facie case was established before the EEOC.

The Government cites to no authority, however, and this Court is aware of none, which directly holds that, in addition to filing a charge with the EEOC in a timely

---

18. This same reasoning applies to Plaintiff's claim regarding his $150 bonus in 1994 for which he failed to exhaust his administrative relief options as discussed in Section II. B *supra.*

manner, the complainant must also state a prima facie case in the administrative proceeding. Nonetheless, to reject the Government's argument would hypothetically allow a party who has failed to timely report past incidents of discrimination to file an EEOC complaint so meritless that it gets dismissed in short order, solely to be able to revive the time-barred incidents by arguing that they are either reasonably related to the meritless complaint or constitute part of the same continuing violation. This result would frustrate the purposes behind reporting deadlines and administrative exhaustion.

■ To resolve these countervailing considerations, the Court is guided by the Second Circuit's approach to evaluating whether a plaintiff has stated a prima facie case of retaliation in discrimination cases, specifically, whether the plaintiff engaged in a protected activity. As discussed in Section II. C *supra*, to establish a prima facie claim of retaliation, a plaintiff must show that he was "engaged in protected activity, that the [defendant] was aware of this activity, that the [defendant] took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Reg'l Econ. Cmty. Action Program, Inc.,* 294 F.3d at 54 (internal quotations omitted) (citing *Sands v. Runyon,* 28 F.3d 1323, 1331 (2nd Cir.1994)); *Holtz* 258 F.3d at 79. The Second Circuit has made it clear that "[a]ll that is necessary for [a] complaint [to the EEOC] to constitute a 'protected activity' is that the plaintiff demonstrate a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Holava–Brown v. Gen. Elec. Co.,* No. 98–CV–9661, 1999 WL 642966, at *3 (2nd Cir.1999) (quoting *Manoharan, M.D. v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590 (2nd Cir.1988)).[19] *See McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2nd Cir. 2001); *Sarno v. Douglas–Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2nd Cir.1999). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 291–92 (2nd Cir.1998) (citing *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2nd Cir.1996)).

The Court is persuaded that such a good faith consideration would be helpful in examining cases like the present one, where the plaintiff seeks to preserve otherwise time-barred claims by linking them to one that the Government maintains, and the Court has concluded, is prima facie untenable. Considering good faith has the benefit of preventing the strategic filing of a meritless EEOC complaint solely to preserve otherwise time-barred complaints without imposing upon a complainant an unfairly rigorous burden of legal or factual knowledge about the reported claim.

Here, Marinelli maintains that when he returned from lunch one and one half hours late on January 18, 1995, Karlin, his supervisor at BLS, indicated that he would dock Marinelli's pay and mark him absent

**19.** For example, in *Manoharan,* the plaintiff had been discharged allegedly for complaining to his employer about the process by which a newly created position had been filled, alleging that this process was discriminatory. The Second Circuit, affirming the district court, concluded that the plaintiff had failed to establish a good faith belief that the hiring process was discriminatory based solely on the fact that the person selected for the job in question was white. *Id.* at 593–94. Accordingly, the Second Circuit affirmed the district court's decision to dismiss the plaintiff's Title VII claim of retaliation for failure to state a prima facie case, specifically, for his failing to establish that he engaged in a protected activity. *Id.*

without leave. Two days later, Karlin told Plaintiff that he would not be docked pay or marked absent without leave, and that he would be permitted to account for the missed portion of the work day with accrued annual leave time. It is undisputed that Marinelli was late returning from lunch and, accordingly, absent from work, and that he did not arrange for this absence with his employer in advance. In other words, it is undisputed that Marinelli was absent without leave for this period of time. Karlin's response upon Marinelli's return, which Marinelli characterizes as a "threat," merely reflects these undisputed facts. Furthermore, Marinelli was not actually marked absent without leave in the end, but, rather, simply warned to "[p]lease adhere to personnel requirements regarding leave in the future," i.e., to arrange for being absent from work in advance. (Pl.'s Rule 56.1 Statement, at Ex. X.)

Marinelli posits the fact that he had a doctor's appointment during that lunch break that lasted longer than expected as an excuse for his absence from work. That explanation is inapposite. Marinelli was absent from work without having considered the reasonable and commonplace understanding that a doctor's appointment does not always commence and conclude as scheduled.[20]

There is no reason for Marinelli not to have been more careful in the planning of his day and arranged with his employer for the possibility of such a delay, and Karlin's response on behalf of BLS repre-

sents nothing more than a reflection of actual events—Marinelli was absent without leave and Karlin initially intended to mark him as such. While the discord reflected in Marinelli's particular history with his employer at best may have skewed Marinelli's perception of this incident, the Court cannot conclude that a rational trier of fact would find a good faith, reasonable basis to assert discrimination under these circumstances. The fact that Karlin reversed his decision two days later is consistent with this conclusion as further evidence of the absence of an underlying plan to discriminate. The mere fact that Marinelli had been diagnosed with certain medical ailments and was visiting the doctor during the time period in question, without more, is not a reasonable or adequate basis from which to infer discrimination. Accordingly, in the absence of a good faith, reasonable belief that Marinelli's employer violated the law in its response to Marinelli's tardy return from lunch on January 18, 1995, the Court concludes that this incident, the only one that was timely reported to the EEOC, cannot serve as the basis for preserving Marinelli's otherwise time-barred claims.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Court's Order dated September 30, 2002 is amended to incorporate the discussion set forth above; and it is further

---

**20.** Marinelli's assertion that BLS had unfairly capped his available advance sick leave, in particular, its rejection of Marinelli's requests to be advanced such time in August and September of 1994, is not relevant to the present claim because Marinelli admits that he still was free to use accrued annual leave time for such absences. (Marinelli Dep., at p. 141, 257; Pl.'s Rule 56.1 Statement, at Ex. U, V.) What is relevant for the present consideration is whether Marinelli had time available to account for his absence, not the nature of that time. Despite its irrelevance to the present discussion, the Court notes that Karlin explained that as of August of 1994, Marinelli had been advanced 91 hours of sick leave time and that Karlin "felt that there was little chance of its being reversed and, therefore, felt it prudent to have [Marinelli] charged

ORDERED that the Government's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close this case.

SO ORDERED.

annual leave since it was available to [him]." (Pl.'s Rule 56.1 Statement, at Ex. 11.)